UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN D. MEDLOCK,

Plaintiff,

v.

FRED FINCH CHILDREN'S HOME,

Defendant.

Case No.  14-cv-03000-JCS

**ORDER REGARDING SUFFICIENCY OF COMPLAINT PURSUANT TO 28 U.S.C. § 1915**

Re: Dkt. Nos. 1, 2

## I.   INTRODUCTION

Plaintiff Karen Medlock filed this pro se action against Fred Finch Children's Home d/b/a Fred Finch Youth Center ("FFYC"), its Chief Executive Officer Vonza Thompson, and its Chief Financial Officer Ed Hsu.  Having previously granted Plaintiff's Application to Proceed in Forma Pauperis, the Court now considers whether Plaintiff's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  *See Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  For the reasons stated below, the Court finds that Medlock may proceed on a claim against for retaliatory discharge under Title VII, but DISMISSES WITH PREJUDICE Medlock's Title VII claims against Thompson and Hsu, and DISMISSES Medlock's remaining claims with leave to amend.[1]

---

[1] Medlock has consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.    THE COMPLAINT

### A.    Facts Alleged[2]

Medlock began working as a senior accountant at FFYC in August 2006.  Compl. (Dkt. 1) ¶ 5a.  She received uniformly positive reviews from two past Chief Financial Officers who supervised her work, George Archambeau and Jon D'Alesso, as well as from her immediate supervisor Coretta MacLean.  *Id.*  Archambeau at one point told Medlock that he wanted to restructure the accounting department to increase employee responsibility and compensation, but not to eliminate jobs.  *Id.*

In March 2009, FFYC hired Ed Hsu as its Chief Financial Officer.  *Id.*   Hsu "started badgering" Medlock and her supervisor for reports that Hsu's predecessors had prepared themselves.  *Id.*  These demands interfered with Medlock's ability to complete her work.  *Id.*  Hsu asked Medlock to prepare a cash flow projection, but as a non-management employee Medlock lacked sufficient knowledge to properly complete the projection.  *Id.*  When Medlock asked Hsu how to proceed, his "instructions didn't make sense."  *Id.*  Medlock filed a complaint in September 2009 with FFYC's human resources director Alonzo Strange, based on Hsu's "constant demands and sexist attitudes towards the women who worked with him."  *Id.*  Strange initially told Medlock that Hsu's requests fell within Medlock's job description but ultimately agreed to conduct an investigation.  *Id.*

Medlock was on leave for most of December 2009 while recovering from surgery.  *Id.*  During her leave, Hsu asked Medlock to come to work to train Mary Jean Figueroa, a former temporary employee whom Hsu had decided to hire full time as an "A/P Assistant."  *Id.* ¶¶ 5a−5c.  Medlock did not want to return to a hostile work environment, so she called the human resources department to inquire about her complaint against Hsu, and a decision was made not to have Medlock train Figueroa.  *Id.* ¶ 5a.  Medlock only then received a copy of the decision regarding her human resources complaint, although the decision was dated October 2009.  *Id.*

When Medlock returned from her leave on December 31, 2009, she was locked out of the

---

[2] The following factual background is based on the allegations of Medlock's Complaint, which the Court takes as true for the limited purpose of assessing the sufficiency of the Complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

FFYC computer system.  *Id.*  Half an hour later, Hsu and a human resources assistant asked Medlock to come to Hsu's office.  *Id.*  Medlock was given a termination letter signed by FFYC's chief executive officer Vonda Thompson, which stated that Medlock's position had been eliminated.  Medlock was told that she could apply for another position with FFYC, resign, or remain and help Figueroa with filing, which was not comparable to Medlock's previous position. *Id.* ¶¶ 5a, 5c.  Medlock declined those options and went home.  *Id.* ¶ 5a.

Medlock also alleges that Hsu showed a "[d]iscriminatory preference for Asian females," as evidenced by his favoritism of Figueroa.  *Id.* ¶ 5b (typographical errors corrected).  During Hsu's first meeting with the FFYC accounting staff, he directed all of his comments to Figueroa (who was then a temporary employee) and ignored the other staff members.  *Id.* ¶ 5a.  According to Medlock, "[e]veryone in [the] meeting noticed his inappropriate behavior, but they were [too] scared of losing their jobs to say anything."  *Id.*  Hsu decided to hire Figueroa as a full time employee within days after he arrived at FFYC, without reviewing Figueroa's resume.  *Id.* ¶ 5b.

The Equal Employment Opportunity Commission (EEOC) issued Medlock a right-to-sue letter on March 31, 2014, indicating that the EEOC was unable to conclude that a violation had occurred.  *See* Compl. Ex. A.

### B.    Medlock's Claims

Interpreted liberally, Medlock's Complaint appears to allege claims under six statutory and common law schemes: Title VII of the Civil Rights Act, the Family and Medical Leave Act ("FMLA"), the False Claims Act, the California Fair Employment and Housing Act ("FEHA"), section 1102.5 of the California Labor Code, and a common law claim for wrongful termination. *See* Compl. ¶¶ 5a–5c.

## III.    ANALYSIS

### A.    Legal Standard

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

*Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings that lack such statement have failed to state a claim.

In determining whether a plaintiff fails to state a claim, the court assumes that all factual allegations in the complaint are true.  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  Thus, to meet this requirement, the complaint must be supported by factual allegations.  *Id.*  Further, a complaint is "frivolous" under § 1915 where there is no subject matter jurisdiction.  *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987) (recognizing the general proposition that a complaint should be dismissed as frivolous under § 1915 where subject matter jurisdiction is lacking).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).  Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

**B.    Subject Matter Jurisdiction**

Because federal courts are courts of limited jurisdiction, Medlock's Complaint must

4

United States District Court
Northern District of California

1    establish the existence of subject matter jurisdiction in order to proceed in federal court.  The

2    Complaint asserts federal question jurisdiction under 28 U.S.C. § 1331.  *See* Compl. ¶ 2.

3         Federal question jurisdiction under § 1331 encompasses civil actions that arise under the

4    Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 1331.  "A case 'arises under'

5    federal law either where federal law creates the cause of action or 'where the vindication of a right

6    under state law necessarily turns on some construction of federal law.'"  *Republican Party of*

7    *Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002) (citations omitted).  "The presence or

8    absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which

9    provides that federal jurisdiction exists only when a federal question is presented on the face of the

10   plaintiff's properly pleaded complaint."  *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183

11   (9th Cir. 2002) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

12        As discussed below, Medlock's Complaint states a claim under 42 U.S.C. § 2000e-3(a), a

13   federal law.  The Court therefore has jurisdiction pursuant to § 1331.

14        The Complaint does not discuss a jurisdictional basis for Medlock's state law claims.

15   Federal courts' jurisdiction over state claims generally arises from 28 U.S.C. §§ 1332 or 1367.

16   Medlock has not alleged facts establishing diversity jurisdiction under § 1332: Medlock is a

17   resident of California, and filed her Complaint against a California employer and two of its

18   officers.  *See* Compl. ¶ 1.  Jurisdiction over the state claims therefore arises, if at all, from § 1367.

19   That statute provides that if a district court has original jurisdiction over an action, the court "shall

20   have supplemental jurisdiction over all other claims that are so related to [the claims that establish

21   original jurisdiction] that they form part of the same case or controversy."  28 U.S.C. § 1367.

22        All of Medlock's claims in this case are based on the same underlying facts, specifically

23   Medlock's termination after taking medical leave and experiencing what she perceived as racial

24   and/or sexual discrimination.  The Complaint states a federal claim under 42 U.S.C. § 2000e-3(a).

25   The Court therefore has jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims, and

26   the Complaint should not be dismissed as frivolous under 28 U.S.C. § 1915 for lack of subject

27   matter jurisdiction.

28

C.    **Federal Claims**

1.   **Race and Sex Discrimination Claims Under Title VII**

The Complaint alleges that Medlock was terminated after reporting to the FFYC human resources department that Hsu "was creating a hostile work environment because of his constant demands and sexist attitudes towards the women who worked with him." Compl. ¶ 5a.  It also alleges that Hsu displayed a discriminatory preference for Asian women, as demonstrated by his preferential treatment of Figueroa. *Id.* ¶¶ 5a, 5c.  Under Title VII, an employer may not discriminate against employees based on race or sex, among other protected attributes, and may not retaliate against an employee who opposes discriminatory conduct.  *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

a.   No Individual Liability

As a threshold matter, Title VII only permits lawsuits against employers—"there is no personal liability for employees, including supervisors." *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995); *see also Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) ("We have long held that Title VII does not provide a separate cause of action against supervisors or co-workers.").  Accordingly any and all of Medlock's Title VII claims against Hsu and Thompson are DISMISSED WITH PREJUDICE.  Medlock may not include Title VII claims against the individual defendants if she chooses to file an amended complaint.

b.   Administrative Exhaustion

Title VII requires an employee to exhaust administrative remedies by filing a charge with the EEOC before bringing a civil action in court.  *See id.* § 2000e-5.  If the employee fails to do so, the court lacks jurisdiction over her claim.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002).

Here, Medlock attached to her Complaint a letter from the EEOC informing her that it had completed its investigation and that she could file a claim in federal or state court within ninety days of receiving the letter.[3]  *See* Compl. Ex. A.   The Court therefore finds no reason to dismiss

---

[3] The Complaint does not indicate when Medlock received the notice, but she filed her Complaint ninety-one days after the notice was mailed, and it is reasonable to infer that she received the notice at least one day after it was mailed.

United States District Court
Northern District of California

1 | Medlock's Title VII claims against FFYC for failure to exhaust administrative requirements.

2 | c.   Hostile Work Environment

3 | "[S]exual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's]

4 | employment and create an abusive working environment' violates Title VII." *Faragher v. City of*

5 | *Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S.

6 | 57, 67 (1986)).  "Workplace conduct is not measured in isolation; instead, whether an environment

7 | is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the

8 | frequency of the discriminatory conduct; its severity; whether it is physically threatening or

9 | humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

10 | employee's work performance." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270−71 (2001)

11 | (per curiam) (citations and internal quotation marks omitted).  Similar standards apply to

12 | harassment based on race or national origin.  *Faragher*, 524 U.S. at 786−87 (citing *Rogers v.*

13 | *EEOC*, 454 F.2d 234 (5th Cir. 1971); *Firefighters Inst. for Racial Equality v. City of St. Louis*, 549

14 | F.2d 506 (8th Cir. 1977)).

15 | Here, Medlock alleges that her human resources complaint was based on a "hostile work

16 | environment because of [Hsu's] constant demands and sexist attitudes towards the women who

17 | worked with him."  Compl. ¶ 5a.  But the statement that Hsu "was creating a hostile work

18 | environment," *id.*, is a "mere conclusory statement" that cannot support a claim without sufficient

19 | factual allegations to render that conclusion plausible.  *See Iqbal*, 556 U.S. at 663.  Medlock's

20 | Complaint does not explain what conduct supports her conclusion that Hsu exhibited "sexist

21 | attitudes"—although she alleges that Hsu made "constant demands" and gave Medlock difficult

22 | assignments with inadequate guidance, there is no indication in the Complaint that this treatment

23 | was based on Medlock's sex or that Hsu treated male employees any differently.  *See* Compl. ¶ 5a.

24 | Medlock's allegation that Hsu exhibited a discriminatory preference for Asian women

25 | appears to be based solely on Hsu's favorable treatment of Figueroa.  *See* Compl. ¶¶ 5a, 5c.  The

26 | Complaint does not include facts supporting a conclusion that Hsu favored Figueroa due to

27 | Figueroa's race, nor does it explain how Hsu's favoritism of Figueroa "alter[ed] the conditions of

28 | [Medlock's] employment and create[d] an abusive working environment."  *See Faragher*, 524

United States District Court
Northern District of California

7

1    U.S. at 786.

2         Without further factual allegations, Medlock's Complaint does not a state a plausible claim

3    for harassment or a hostile work environment under Title VII.  Accordingly, to the extent that

4    Medlock intended to bring such a claim, it is DISMISSED with leave to amend.  If Medlock

5    chooses to amend her Complaint to state a Title VII harassment claim against FFYC, she should

6    include specific factual allegations regarding the conduct at issue, sufficient to support a

7    conclusion that the conduct was (1) on account of Medlock's race or sex; and (2) so severe or

8    pervasive that it altered the conditions of Medlock's employment.

9                   d.   Termination on Account of Race or Gender

10        The Complaint does not explicitly allege that Medlock was terminated on account of her

11   race or sex.  However, because the Complaint includes allegations of race and sex discrimination

12   as well as allegations of wrongful termination, the Court "construe[s] the pleadings liberally . . . to

13   afford the petitioner the benefit of any doubt," *see Hebbe*, 627 F.3d at 342, and considers whether

14   Medlock states a claim for discriminatory termination.

15        Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge

16   any individual . . . because of such individual's race, color, religion, sex, or national origin."  42

17   U.S.C. § 2000e-2(a).  A plaintiff must generally present "actions taken by the employer from

18   which one can infer, if such actions remain unexplained, that it is more likely than not that such

19   action was based upon race or another impermissible criterion." *Bodett v. CoxCom, Inc.*, 366 F.3d

20   736, 743 (9th Cir. 2004) (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)).

21   Discrimination need not be the only reason for the termination.  "It suffices instead to show that

22   the motive to discriminate was one of the employer's motives, even if the employer also had other,

23   lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v.*

24   *Nassar*, 133 S. Ct. 2517, 2523 (2013).

25        A plaintiff may rely either on direct evidence that her termination was racially motivated,

26   or on circumstantial evidence by showing that: (1) she is a member of a protected class; (2) she

27   was qualified for her position and performed adequately; (3) she experienced adverse employment

28   action; and (4) similarly situated individuals not in her protected class were treated more

United States District Court
Northern District of California

8

favorably, or other circumstances give rise to an inference of discrimination.  *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).  Although a plaintiff does not necessarily need to plead each of these elements specifically in her complaint, they nevertheless "help to determine whether Plaintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-2950 CRB, 2013 WL 812425, at *4 n.3 (N.D. Cal. Mar. 5, 2013) (examining relevant authority).

Here, Medlock's Complaint does not include sufficient facts to support a conclusion that her termination was based even in part on her race or sex.[4]  There are no factual allegations of overtly racially or sexually charged conduct by Hsu or others in the context of Medlock's termination.  The Complaint only alleges more favorable treatment of a single employee, Figueroa, who occupied a more junior position than Medlock and thus does not appear to have been similarly situated.  To the extent that the Complaint can be construed as bringing a claim for wrongful discriminatory termination, that claim is DISMISSED for failure to state sufficient facts to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  The Court grants Medlock leave to amend her Complaint if she wishes to state a claim against FFYC for discriminatory termination and is aware of additional facts supporting that conclusion.

e.  Retaliatory Termination

Title VII also prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  The Ninth Circuit has long held that "a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII," but instead "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII."  *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).  Filing a complaint with an internal human resources department "that a supervisor has violated Title VII may constitute protected activity for which the employer cannot lawfully retaliate."  *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009).  "Title VII

---

[4] The Complaint does not state Medlock's sex or race, but it is reasonable to infer from the Complaint as a whole that she is female and not Asian.

United States District Court
Northern District of California

United States District Court
Northern District of California

retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S. Ct. at 2528, 2534.

Medlock alleges (1) that she filed a complaint with the FFYC human resources department stating that Hsu's "sexist attitudes" created a "hostile work environment"; (2) that the human resources director pushed back against her filing the complaint; (3) that Medlock did not receive a copy of the decision regarding her complaint until two months later while she was on leave, when she asked about it in response to the request that she come to work to train Figueroa; and (4) that she was terminated immediately upon her return from leave. Compl. ¶ 5a. Affording Medlock "the benefit of any doubt," *see Hebbe*, 627 F.3d at 342, it is reasonable for the purpose of this § 1915 review to infer that Medlock reasonably believed Hsu's conduct constituted a violation of Title VII. It is also plausible, based on the timing of Medlock's termination, that Medlock was fired because she filed her internal complaint and continued to follow up regarding its status. The Court therefore finds that Medlock's claim against FFYC for retaliatory discharge under 42 U.S.C. § 2000e-3(a) is sufficient to survive review under § 1915, and may proceed.

### 2.   Family and Medical Leave Act Claim

The Family and Medical Leave Act (FMLA) requires that employers must provide certain amounts of leave if "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer cannot interfere with an employee's rights under the statute or retaliate against employees for opposing unlawful practices, *id.* § 2615(a), and an employee may bring a civil action for damages and equitable relief in case of a violation, *id.* § 2617(a). Such a claim must be brought within two years of the employer's wrongful conduct, or within three years if based on a willful violation. *Id.* § 2617(c).

Here, although Medlock alleges that she was terminated after declining to work during her medical leave, she filed her Complaint more than four years after she was fired.[5] Medlock appears to have waited to file her Complaint until after she received a right-to-sue letter from the EEOC,

---

[5] Medlock alleges that she was terminated on December 31, 2009. Compl. ¶ 5a. She filed her Complaint on June 30, 2014. *See generally* Compl.

1  but that does not extend the time to file an FMLA claim.  "[B]ecause a plaintiff need not exhaust

2  administrative remedies before bringing an FMLA action, the filing of a discrimination charge

3  with the EEOC does not toll the FMLA statute of limitations." *Fulghen v. Potter*, No. 10-11150,

4  2010 WL 4865818, at *3 (E.D. Mich. Nov. 16, 2010); *see also Hayes v. Prism Career Inst.*, No.

5  13-1127, 2014 WL 1414371, at *3 (E.D. Pa. April 11, 2014); *Vazquez Vazquez v. Checkpoint Sys.*

6  *of P.R.*, 609 F. Supp. 2d 217, 221−22 (D.P.R. 2009); *cf. Churchill v. Star Enters.*, 183 F.3d 184,

7  193−94 (3d Cir. 1999) (encouraging district courts to grant stays of timely-filed FMLA claims

8  while administrative proceedings related to other employment statutes are pending).

9      The statute of limitations for an FMLA claim based on Medlock's termination expired in

10  2012 at the latest.  The Complaint presents no basis to toll the statute of limitations, and the Court

11  therefore DISMISSES Medlock's FMLA claim.  Medlock may amend her Complaint if she is

12  aware of additional facts that would support tolling the statute of limitations under the FMLA.

13      **3.  False Claims Act Retaliation Claim**

14      The Complaint also cites the False Claims Act as authority preventing an employer from

15  retaliating against an employee's exercise of legal rights.  Compl. ¶ 5c (citing 31 U.S.C.

16  §§ 3729−33).  Although the False Claims Act includes an anti-retaliation provision, it protects

17  only "lawful acts done by the employee . . . in furtherance of an action *under this section* or other

18  efforts to stop 1 or more violations *of this subchapter*."  31 U.S.C. § 3730(h) (1).  The False

19  Claims Act relates to efforts to defraud the federal government and allows private persons to bring

20  actions in the name of the government for violations.  *See generally id.* §§ 3729−30.  Medlock has

21  does not allege that any defendant violated the False Claims Act, or that Medlock acted to stop,

22  prevent, or prosecute any such violation.  *See generally* Compl.  The Court therefore DISMISSES

23  Medlock's claim under the False Claims Act.

24      If Medlock intended to bring a retaliation claim under the False Claims Act, and is aware

25  of facts supporting such a claim—i.e., that Medlock was fired in retaliation for efforts to stop or

26  prosecute a violation of the False Claims Act—she may amend her Complaint to allege such facts.

27

28

United States District Court
Northern District of California

### D.   State Law Claims

#### 1.   Race and Sex Discrimination Claims Under FEHA

California law, under FEHA, prohibits employment discrimination based on race or sex. *See* Cal. Govt. Code § 12940.  But much like Title VII's requirement of a right-to-sue letter from the EEOC, FEHA requires that an employee "fil[e] a written charge with [the California Department of Fair Employment and Housing ('DFEH')] within one year of the alleged unlawful employment discrimination, and obtain[] notice from DFEH of the right to sue." *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (citing *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996)).  "The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA." *Romano*, 14 Cal. 4th at 492.

Medlock's Complaint does not discuss any efforts to pursue an administrative claim through the California Department of Fair Employment and Housing.  A right-to-sue letter from the federal EEOC does not satisfy the state-law administrative requirements for a FEHA claim. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994).  To the extent the Complaint can be construed as bringing a claim under FEHA, that claim is therefore DISMISSED for failure to comply with the administrative exhaustion requirements of the statute.  If Medlock has complied with FEHA's exhaustion requirement, or if she believes an exception to the requirement applies, she may amend her Complaint to state facts supporting that conclusion.

#### 2.   California Labor Code Claims

Medlock's Complaint cites two provisions of the California Labor Code for the assertion that "[i]t is unlawful for an employer to retaliate against an employee because she exercised her legal rights."  Compl. ¶ 5c (citing Cal. Labor Code §§ 1102.5, 2856).

One of those statutes, Labor Code section 2856, states that "[a]n employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee."  Cal. Labor Code § 2856.  This statute neither creates a legal right of an employee nor bars an employer from retaliation.

The other statute, Labor Code section 1102.5, is more on point.  That law currently

United States District Court
Northern District of California

provides in relevant part that "[a]n employer, or any person acting behalf of the employer, shall not retaliate against an employee for disclosing information . . . [to] another employee who has the authority to investigate discover, or correct the violation . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute." Cal. Labor Code § 1102.5(b).

Section 1102.5 was amended in 2013, however—before the amendment, it only encompassed complaints made to government agencies, not internal complaints to an employer. *See* 2013 Cal. Legis. Serv. Ch. 781 (S.B. 496) (Filed Oct. 21, 2013); *see also Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 77 (1998) (holding that a previous version of the statute "d[id] not protect [a] plaintiff who reported his suspicions directly to his employer"). "Under California law, as under federal law, statutes do not operate retrospectively unless the legislature plainly intended them to do so." *Valley v. Ivy Hill Corp.*, 410 F.3d 1071, 1079 (9th Cir. 2005) (citing *Evangelatos v. Super. Ct.*, 44 Cal. 3d 1188, 753 P.3d 585, 596−97 (1988)). The Court finds no indication of such intent here, and concludes that the amendment to protect internal reporting does not apply retrospectively and thus does not govern Medlock's termination in 2009.

Medlock's claim under section 1102.5 is therefore DISMISSED, because there is no indication in the Complaint that she was terminated retaliation for reporting wrongful conduct to a governmental or law enforcement agency. *See Green*, 19 Cal. 4th at 77. If Medlock reported discriminatory or otherwise wrongful conduct to a governmental agency before her termination, and believes that she was terminated in retaliation for such a report, she may amend her Complaint to allege facts supporting that conclusion.

### 3. Common Law Wrongful Discharge Claim

Although employment contracts are generally terminable at will,[6] California recognizes a tort claim for wrongful discharge in violation of public policy. *See Green*, 19 Cal. 4th at 71 (citing Cal. Lab. Code § 2922; *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 172 (1980)). Courts have recognized that this claim may be viable in cases that approximate but do not meet the

---

[6] Medlock's Complaint does not allege that her employment was anything other than at-will.

1    requirements of section 1102.5, including retaliatory discharge after an employee filed an internal

2    complaint.  *E.g.*, *Collier v. Superior Court*, 228 Cal. App. 3d 1117, 1123−24, 1127 (1991).  The

3    California Supreme Court has also held that a common law wrongful termination claim may be

4    based on "the fundamental public interest in a workplace free of the pernicious influence of

5    sexism."  *Rojo v. Kliger*, 52 Cal. 3d 65, 90 (1990).

6         A common law wrongful discharge claim is subject to a two-year statute of limitations

7    under section 335.1 of the California Code of Civil Procedure.  *Mathieu v. Norrell Corp.*, 115 Cal.

8    App. 4th 1174, 1189 & n.14 (2004); *see also Goel v. Shah*, No. C 13-3586 SBA, 2014 WL

9    460867, at *3 (N.D. Cal. Feb. 3, 2014).  The claim accrues at the time of discharge, *Goel*, 2014

10   WL 460867, at *3 (citing *Romano*, 14 Cal. 4th at 501), and the limitations period is not tolled

11   while a plaintiff pursues administrative claims, *Mathieu*, 115 Cal. App. 4th at 1189−90 (citing

12   *Rojo*, 52 Cal. 3d at 86).

13        Because Medlock filed her Complaint more than two years after she was terminated by

14   FFYC, the Court DISMISSES her common law claim for wrongful termination.  It is not,

15   however, "absolutely clear that the deficiencies of the complaint could not be cured by

16   amendment," *Akhtar*, 698 F.3d at 1212, because Medlock could conceivably allege other facts that

17   support tolling the statute of limitations.  Medlock may therefore amend her Complaint to state a

18   common law claim for wrongful discharge if she is aware of additional facts that support tolling or

19   extending the statute of limitations under section 335.1.

20   **IV.   CONCLUSION**

21        For the reasons discussed above, the Court finds that Medlock's Title VII retaliation claim

22   against FFYC is sufficient to proceed, but DISMISSES WITH PREJUDICE all Title VII claims

23   against Defendants Hsu and Thompson, and DISMISSES Medlock's remaining claims with leave

24   to amend.

25        If Medlock wishes to file an amended complaint, she may do so **within forty-five days of**

26   **the date of this Order.**   The first amended complaint must include the caption and civil case

27   number used in this Order (14-cv-03000-JCS) and the words FIRST AMENDED COMPLAINT

28   on the first page.  Because an amended complaint completely replaces the previous complaint, any

United States District Court
Northern District of California

14

amended complaint must include all the claims Medlock wishes to present and all of the defendants she wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  An amended complaint may not incorporate material from the prior complaint by reference, and may not include Title VII claims against Hsu or Thompson.  If Medlock wishes to amend any of the other claims dismissed in this Order, her amended complaint must address the deficiencies discussed above.  Medlock is encouraged to continue to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses[7] for assistance as she continues to prosecute this action.

**IT IS SO ORDERED.**

Dated:  September 24, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

[7] The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office.  Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.